# EXHIBIT B

**VIRGINIA:**

**IN THE CIRCUIT COURT FOR PRINCE WILLIAM COUNTY**

R. THOMAS TIBBETTS
11030 Briarlynn Court
Fairfax Station, Virginia 22039

-and-

KRISTEN TIBBETTS
11030 Briarlynn Court
Fairfax Station, Virginia 22039                              Case No. _CL 20 ·8031_

             *Plaintiffs,*

v.

COLEMAN WORLDWIDE MOVING, LLC
Serve:
Registered Agent John Brooks
61 Basil Sawyer Drive
Hampton, Virginia 23666

-and-

DIRCKS MOVING SERVICES, INC.
Serve:
Registered Agent Bradley D. Weech
David Miles McGuire Gardner PLLC
40 E Rio Salado Parkway, Suite 425
Tempe, Arizona 85281

             *Defendants.*

## COMPLAINT AND JURY DEMAND

    Plaintiffs, R. Thomas Tibbetts and Kristen Tibbetts, by and through their undersigned

counsel, and for their Complaint against Defendants Coleman Worldwide Moving, LLC and

Dircks Moving Services, Inc., hereby allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.   Plaintiff R. Thomas Tibbetts is an individual residing at 11030 Briarlynn Court, Fairfax Station, Virginia 22039.

2.   Plaintiff Kristen Tibbetts is an individual residing at 11030 Briarlynn Court, Fairfax Station, Virginia 22039.

3.   Defendant Coleman Worldwide Moving, LLC ("Coleman") is a limited liability company organized and existing under the laws of the State of Alabama, with multiple offices in the Commonwealth of Virginia, including one at 15381 Farm Creek Dr, Woodbridge, VA 22191 in Prince William County.  Coleman's statutory agent is located at 61 Basil Sawyer Drive, Hampton, Virginia 23666.

4.   Dircks Moving Services, Inc. ("Dircks") is a corporation organized and existing under the laws of the State of Arizona with its office address located at 4340 W Mohave Street, Phoenix, Arizona 85043.   Dircks provides moving services nationally and, as further alleged hereinbelow, contracts with the United States Department of Defense to provide moving and logistics services to relocate members of the armed services throughout the United States, including relocating the Plaintiff's possessions from their previous home in Hawaii to their new home in Virginia.

5.   This Court has jurisdiction over this action pursuant to Va. Code § 17.1-513.

6.   This Court has personal jurisdiction over Coleman pursuant to Va. Code § 8.01-328.1, as Coleman contracted to supply services in the Commonwealth, transacted business in the Commonwealth, and committed tortious injury by an act or omission in the Commonwealth, out of which this action arises.

2

7.   This Court has personal jurisdiction over Dircks pursuant to Va. Code § 8.01-328.1, as Dircks contracted to supply services in the Commonwealth and transacted business in the Commonwealth, out of which this action arises.

8.   Venue is proper in this forum pursuant Va. Code § 8.01-262(3), where defendants regularly conduct substantial business activity.

## FACTS COMMON TO ALL COUNTS

9.   R. Thomas Tibbetts ("Col. Tibbetts") is a Colonel in the United States Air Force and has been faithfully serving his county for the past twenty-six (26) years.

10.  After a lengthy tour of duty in Hawaii, Col. Tibbetts was reassigned from his post in Honolulu to the Washington, D.C. area.  Accordingly, he and his wife relocated to Fairfax Station, Virginia.

11.  The shipment of the Tibbetts family's household goods was administered by the United States Department of Defense, as HHG Shipment # MLNQ0529509.

12.  The Department of Defense contracted with Dircks to oversee the shipment.

13.  Dircks, in turn, subcontracted with Coleman to handle the local delivery of the Tibbetts' household goods from the Baltimore port to Fairfax Station upon their delivery from Hawaii.

14.  Following the arrival of the Tibbetts' household goods in Baltimore on or about August 16, 2018, Coleman employees retrieved those items for delivery to the Tibbetts' new home in Fairfax Station, Virginia (the "Residence").

15.  Col. and Mrs. Tibbetts were present at the Residence upon Coleman's arrival with their household goods.

3

16. The team of movers was accompanied by the General Manager of Coleman, Charles Sullivan, who supervised his team setting up but did not remain during most of the moving process.

17. Among the Coleman workers that performed the move were two individuals named Edward Parker and Donnell Johnson.

18. Unbeknownst to the Tibbetts family, Mr. Parker had an extensive criminal history in the Commonwealth of Virginia. Mr. Parker's criminal history includes, for example, convictions for possession and distribution of cocaine, shoplifting, and numerous convictions for felony grand larceny.

19. Upon information and belief, Mr. Parker was in fact released from incarceration very shortly before committing the grand larceny and civil conversion at issue in this case.

20. Mr. Parker may or may not have been working with Donnell Johnson to perpetrate this crime. On information and belief, Mr. Johnson may also have had a prior criminal history and may have previously committed crimes with Mr. Parker.

21. Had the Tibbetts known about the checkered past of one or more of Coleman's movers, and Mr. Parker's very recent release from incarceration, they would never have allowed Coleman to perform their move or to bring these men into their Residence, let alone anywhere near their valuable household goods and jewelry.

22. Mrs. Tibbetts has a vivid recollection of Edward Parker being overtly friendly and outgoing during the move-in. She specifically recalls Mr. Parker telling entertaining stories about Florida State football (her *alma mater*) as he moved furniture into the master bedroom of the Residence. In hindsight, it is clear that Mr. Parker was working hard to earn Mrs.

Tibbetts' trust, especially in the location where he would ultimately steal a valuable collection of jewelry that was priceless to her.

23. Mrs. Tibbetts' jewelry box was in the master bedroom of the Residence, and at some time during the move, Edward Parker stole at least two dozen pieces of heirloom jewelry.

24. In addition to the intrinsic value of this jewelry, which has a replacement value in excess of $110,000.00, these items were priceless to Mrs. Tibbetts because they represented the most significant jewelry Col. Tibbetts had ever given to his wife as well as her most treasured inheritance from her deceased grandmother and also her mother, who passed away only a year before this theft, in July 2017, from Alzheimer's disease.

25. The move took place over two days and the theft was discovered by Mrs. Tibbetts within a few hours after the movers left on the second day, August 17, 2018.

26. Col. Tibbetts immediately reported the theft to General Manager Charles Sullivan, who did not seem at all surprised and admitted explicitly that, "Sometimes my employees get sticky fingers."

27. The theft was also reported to the Fairfax County Police Department and was designated as Case # 20182320165, with Detective Nicole Krstulovic assigned to investigate for grand larceny.  Detective Krstulovic took statements from the Tibbetts and recorded the list of items that Mrs. Tibbetts was able to immediately identify as being missing.

28. The Police Department got lucky in its investigation because it turns out that, after stealing the jewelry from the Tibbetts' new home, Edward Parker went to a pawn shop within twenty-four (24) hours and sold a few of the items he had stolen.  He also used his real name and, consequently, the police were able to determine definitively that Edward Parker was the thief.

5

29.  As a result of the conclusive evidence against him, Mr. Parker agreed to plead guilty to charges of grand larceny.  On information and belief, Mr. Parker's sentencing was to take place in late May 2020, but that hearing has been delayed due to the COVID-19 pandemic and is now set to take place in September 2020.

30.  During the investigation, Mr. Parker apparently alleged that his co-worker Donnell Johnson participated in the theft, but it is our understanding that, because there was no corroborating evidence of his involvement (such as the pawn shop evidence against Mr. Parker), Mr. Johnson was not prosecuted.

31.  The Tibbetts family's gold jewelry that the pawn shop purchased from Mr. Parker was melted down, rendering it completely irretrievable.  Thus, despite the perpetrator being caught, the Tibbetts have not recovered any of the stolen jewelry.  The jewelry that meant nothing more than some quick cash to Edward Parker was worth everything to Mrs. Tibbetts, and these mementos to her mother's and grandmother's lives are now gone forever.

32.  Upon information and belief, Coleman failed to conduct the most basic of background checks on Edward Parker prior to hiring him.

33.  Alternatively, Coleman hired Mr. Parker notwithstanding his extensive criminal history, which included at least twelve (12) felony criminal charges since the early 1990s in the Commonwealth of Virginia alone, with the charges including drug and theft-related convictions for which he was incarcerated on numerous occasions.

34.  These are facts which Coleman knew, or in the exercise of reasonable care, should have known when Mr. Parker was hired.

6

35.  The total replacement value of the jewelry that Mr. Parker stole from Plaintiffs was preliminarily estimated to be in excess of $110,000.00.  However, during the COVID-19 pandemic of 2020, the value of gold has increased more than 30% and continues to rise. As such, it is believed that the replacement value of the jewelry already has increased substantially and will continue to increase until such time as the Plaintiffs are compensated and able to purchase replacement items.  As a result, Plaintiffs currently estimate the value of their jewelry at $150,000 and reserve the right to further amend their Complaint as needed to update the current replacement value of the lost jewelry, according to proof.

36.  In addition to the monetary value of the jewelry, the Tibbetts have suffered severe emotional distress as a result of the violation of their new home.

37.  For example, Mrs. Tibbetts has constant flashbacks of Edward Parking standing close to her, smiling and laughing in her bedroom, trying to lull her into a false sense of security while actively scoping out a way to access her jewelry box at an opportune moment.

38.  These flashbacks have caused Mrs. Tibbetts extreme anxiety, nightmares, insomnia, fear and profound insecurity in her own home.  This fear and anxiety, added to the renewed grief for her mother and grandmother that the theft of their most prized possessions has engendered, all has caused Mrs. Tibbetts to seek professional psychotherapy so that she can try to get past this event and move on with her life.  The master bedroom of the home is meant to be a location of sanctity and security; for Mrs. Tibbetts, it is a place where she is confronted by horrible memories and feelings of violation.  Far from a sanctuary, it is a source of discomfort and she is continuing at this time to work with her therapist in an effort to remedy this.

39.   Although it was Mrs. Tibbetts' jewelry that was stolen by Edward Parker, she was not the only victim. Col. Tom Tibbetts has moved all over the world throughout the last twenty-six (26) years with his wife, all in the line of duty. He and Mrs. Tibbetts have trusted dozens of moving companies over the years to come into their home at each new assignment and to handle all their personal possessions. For Col. Tibbetts, that trust was shattered when Edward Parker violated the sanctity and security of their new home.

40.   Like his wife, Col. Tibbetts is regularly confronted with horrible memories, especially the moment when he first learned of the theft. Shortly after the Coleman movers had left on August 17, 2020, he walked upstairs and found his wife curled in the fetal position on the floor of their bedroom, sobbing uncontrollably. She had just discovered that the majority of her jewelry was gone. The gold cross necklace that her mother wore to church for her entire adult life until succumbing to Alzheimer's Disease in 2017: gone. The engagement ring Col. Tibbetts gave his wife and which he worked many years to pay for: gone. A modest ring he gave Kristen when they were high-school sweethearts in 1988: gone. Kristen's grandmother's antique diamond wedding band from the 1940's: gone. Dozens of other heirloom jewelry pieces with priceless family memories: all gone. The theft of these items will have a generational impact on the Tibbetts family, as they no longer have the heirloom jewelry that they planned to pass on to their teenaged daughter at key moments in her later life.

41.   Col. Tibbetts shares Kristen's feeling that the Residence was violated just a few weeks after they had moved in, and these feelings are unlikely to depart any time in the foreseeable future. Moreover, Col. Tibbetts is devastated that the engagement ring he worked so hard to provide to his wife as a sign of his love for her is gone forever. Even if it were possible

8

to replace the ring with one that would have the same sentimental value, replacing it is next to impossible because it contained a stone that has become much rarer and more expensive than when he originally purchased the ring.

## COUNT I – NEGLIGENT HIRING (Coleman Worldwide Moving, LLC)

42. Paragraphs 1 to 41 of this Complaint are reiterated and realleged as if fully set forth herein.

43. Coleman had a duty to take reasonable care in hiring employees that would enter its customers' homes and handle their most valuable possessions. In the case of movers, this would, at minimum, require Coleman to conduct a basic background check on movers it hired, and whom Coleman's customers would have no choice but to trust inside their homes.

44. Coleman breached this duty by hiring Edward Parker without conducting a basic background check and/or by hiring Edward Parker notwithstanding his extensive criminal background and known (or reasonably discoverable) propensities of committing felony grand larceny time and time again, and by placing him in a position in which it was foreseeable that he would pose a clear threat to others, including Plaintiffs.

45. As a direct and proximate result of Coleman's breach of this duty, Plaintiffs have suffered monetary damages in the amount $150,000, and have suffered severe mental and emotional distress for which they have a right to be compensated, in an amount to be proven at trial, but no less than $150,000.00.

46. Moreover, Coleman is liable to Plaintiffs for punitive damages as a result its management's willful and wanton negligence, conscious disregard of Plaintiffs' rights, and reckless indifference to the consequences of its actions, which it knew were likely to cause injury to Plaintiffs and others. Coleman management had pre-existing knowledge of its

employees' propensities to have "sticky fingers" (i.e. their propensity to engage in civil conversion of its customers belongings), and yet was indifferent to the consequences of its negligent hiring practices, which were reasonably certain to, and indeed did, cause injury to Plaintiffs. Accordingly, punitive damages should be awarded to Plaintiffs in an amount of at least $150,000.

### COUNT III – NEGLIGENT RETENTION (Coleman Worldwide Moving, LLC)

47. Paragraphs 1 to 41 of this Complaint are reiterated and realleged as if fully set forth herein.

48. Coleman had a duty to take reasonable care in retaining employees that would enter its customers' homes and handle their most valuable possessions.

49. Coleman breached this duty by retaining Edward Parker after it learned of his criminal propensities while he was a current employee of Coleman.

50. As a direct and proximate result of Coleman's breach of this duty, Plaintiffs have suffered monetary damages in the amount $150,000, and have suffered severe mental and emotional distress for which they have a right to be compensated, in an amount to be proven at trial, but no less than $150,000.00.

51. Moreover, Coleman is liable to Plaintiffs for punitive damages as a result of its management's willful and wanton negligence, conscious disregard of Plaintiffs' rights, and reckless indifference to the consequences of its actions that it knew were likely to cause injury to Plaintiffs and others. Coleman management had pre-existing knowledge of its employees' propensities to have "sticky fingers" (i.e. their propensity to engage in civil conversion of its customers belongings), and yet was indifferent to the consequences of its negligent retention practices, which were reasonably certain to, and indeed did, cause

10

injury to Plaintiffs. Accordingly, punitive damages should be awarded to Plaintiffs in an amount of at least $150,000.

## COUNT IV – RESPONDEAT SUPERIOR (Coleman Worldwide Moving, LLC)

52. Paragraphs 1 to 41 of this Complaint are reiterated and realleged as if fully set forth herein.

53. Edward Parker was acting within the scope of his employment with Coleman (i.e. moving household goods into a home) when he committed the tort of conversion by stealing Plaintiffs' jewelry.

54. The service being performed by Mr. Parker in which the tort of conversion was committed was within the ordinary course of Coleman's business.

55. Accordingly, Coleman is vicariously liable under a theory of respondeat superior for the damages suffered by Plaintiffs as a direct and proximate result of Edward Parker's conversion of the Tibbetts' jewelry, to wit, $150,000 in monetary damages for the conversion and damages for mental and emotional distress in an amount to be proven at trial, but no less than $150,000.00.

## COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (Coleman Worldwide Moving, LLC)

56. Paragraphs 1 to 41 of this Complaint are reiterated and realleged as if fully set forth herein.

57. As a direct and proximate result of Coleman's negligent acts and omissions, Plaintiff Kristen Tibbetts has suffered extreme emotional distress.

58. The extreme emotional distress suffered by Plaintiff Kristen Tibbetts was accompanied by resulting physical symptoms and injuries, including, *inter alia*, nightmares, insomnia and extreme anxiety.

11

59. As a direct and proximate result of Coleman's negligent acts and omissions, Plaintiff Kristen Tibbetts has suffered severe mental and emotional distress for which she should be compensated, in an amount to be proven at trial, but no less than $150,000.00.

### COUNT VI – NEGLIGENCE (Vicarious Liability) (Dircks Moving Services, Inc.)

60. Paragraphs 1 to 51 of this Complaint are reiterated and realleged as if fully set forth herein.

61. Dircks' delegation of its obligations under Department of Defense HHG Shipment # MLNQ0529509 to Coleman rendered Coleman an agent of Dircks under applicable law.

62. Accordingly, Dircks is liable for Coleman's negligence that causes foreseeable injury to third parties in performing its delegated duties.

63. Coleman was negligent in its hiring and retention practices for the reasons stated herein, and that negligence directly and proximately caused Plaintiffs to suffer monetary damages in the amount of $150,000 for the lost jewelry, and extreme mental and emotional distress in an amount to be proven at trial, but no less than $150,000.

64. Therefore, under a theory of agency, Dircks is liable to Plaintiffs for the monetary damages suffered as a result of its agent, Coleman's negligence, in the amount of $300,000.

### COUNT VII –NEGLIGENCE (Direct Liability) (Dircks Moving Services, Inc.)

65. Paragraphs 1 to 51 of this Complaint are reiterated and realleged as if fully set forth herein.

66. Dircks had a duty to use reasonable care in subcontracting with an entity, the employees of which would enter its customers' homes and handle their most valuable possessions. In the case of movers, this would, at minimum, require Dircks to conduct reasonable due diligence on the local moving company that it engaged to handle the local delivery of the Tibbetts family's household goods.

67. Just as Coleman engaged Mr. Parker without exercising any due diligence regarding his criminal history, Dircks failed to conduct the most basic due diligence on Coleman, to determine if it exercised reasonable care in, *inter alia*, its hiring practices.

68. This led to Dircks authorizing Coleman to enter into the Tibbetts home, notwithstanding the fact that one of Coleman's employees has an extensive criminal history, including at least twelve (12) felony criminal charges since the early 1990s in the Commonwealth of Virginia alone, with the charges including drug and theft-related convictions for which he was incarcerated on numerous occasions. These are facts which Dircks knew or, in the exercise of reasonable care, should have known when Coleman was subcontracted.

69. Moreover, Dircks failed to perform due diligence on Coleman's employee retention practices such that it either failed to detect that Coleman does not exercise reasonable care in that regard, as evidence by Coleman's retention of Parker notwithstanding its knowledge of his criminal background and/or its knowledge that Parker and other employees had been known to have "sticky fingers" while performing work on Coleman's behalf.

70. Dircks breached its duty to use reasonable care by subcontracting with Coleman without taking reasonable care in its selection of Coleman to perform its obligations under Department of Defense HHG Shipment # MLNQ0529509.

71. As a direct and proximate result of Dircks' breach of this duty, Plaintiffs have suffered monetary damages in the amount $150,000 for the lost jewelry, and extreme mental and emotional distress in an amount to be proven at trial, but no less than $150,000.

## COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Dircks Moving Services, Inc.)

72. Each of the foregoing paragraphs are repeated and realleged as if fully set forth herein.

73.  As a direct and proximate result of Dircks' negligent acts and omissions, Plaintiff Kristen Tibbetts has suffered extreme emotional distress.

74.  The extreme emotional distress suffered by Plaintiff Kristen Tibbetts was accompanied by resulting physical symptoms and injuries, including, *inter alia*, nightmares, insomnia and extreme anxiety.

75.  As a direct and proximate result of Dircks' negligent acts and omissions, Plaintiff Kristen Tibbetts has suffered severe mental and emotional distress for which she should be compensated, in an amount to be proven at trial, but no less than $150,000.00.

## COUNT IX – BREACH OF CONTRACT (Dircks Moving Services, Inc.)

76.  Each of the foregoing paragraphs are repeated and realleged as if fully set forth herein.

77.  Dircks entered into a valid and enforceable contract with the United States Department of Defense to administer HHG Shipment # MLNQ0529509 and to oversee the shipment of the Tibbetts' household goods from Honolulu to Fairfax Station, Virginia.

78.  The Tibbetts family was an intended third-party beneficiary to that contract.

79.  Dircks breached its contract with the United States Department of Defense by failing to exercise reasonable care and due diligence in selecting a delegee, Coleman, as its agent for the local delivery of the Tibbetts household goods, as Dircks failed to make any inquiry regarding Coleman's employment, hiring and retention practices.

80.  Had Dircks made even the slightest inquiry into Coleman's employment practices, it would have learned that those practices were deplorable, as Coleman: (i) performed no screening of potential employees, which led it to employ at least one career criminal; and (ii) retained employees even with actual knowledge that they had a propensity to steal from customers.

14

81. As a direct and proximate result of Dircks' breach of its contract with the United States Department of Defense, Plaintiffs, who were intended third-party beneficiaries of that contract, suffered monetary damages in the amount $150,000 for the lost jewelry and extreme mental and emotional distress in an amount to be proven at trial, but no less than $150,000.

**WHEREFORE**, in consideration of the foregoing, Plaintiffs R. Thomas Tibbetts and Kristen Tibbetts respectfully request that this Court grant the following relief:

a) To determine that Coleman Worldwide Moving, LLC is liable to Plaintiffs for negligent hiring, negligent retention, conversion under a theory of respondeat superior, and negligent infliction of emotional distress;

b) To determine that Dircks Moving Services, Inc. is liable to Plaintiffs for negligence under a theory of agency and direct negligence, and under a theory of breach of a contract to which the Plaintiffs were third party beneficiaries;

c) To enter final judgment in Plaintiff's favor and against Coleman Worldwide Moving, LLC, and Dircks Moving Services, Inc., jointly and severally, for compensatory damages in an amount to be proven at trial, but no less than $300,000, plus punitive damages in the amount of at least $150,000.00, plus pre-judgment interest as permitted by law, post-judgment interest at the applicable rate, attorneys' fees and costs as permissible by law; and

d) For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable pursuant to Rule 3:21 of the

Rules of the Supreme Court of Virginia.

Dated:  August 13, 2020                                    Respectfully submitted,

                                                           KALBIAN HAGERTY LLP


                                                           D. Michelle Douglas (VBN # 74838)
                                                           Evan M. Lisull (VBN # 86194)
                                                           888 17th Street, N.W., Suite 1000
                                                           Washington, D.C. 20006
                                                           Tel: (202) 223-5600
                                                           Fax: (202) 223-6625

**COVER SHEET FOR FILING CIVIL ACTIONS**
COMMONWEALTH OF VIRGINIA

Case No. **CL 20-8031**
(CLERK'S OFFICE USE ONLY)

............................ PRINCE WILLIAM COUNTY ............................ Circuit Court

R. Thomas Tibbetts                v/*In re:*   Coleman Worldwide Moving, LLC and
PLAINTIFF(S)                                        DEFENDANT(S)
Kristen Tibbetts                                  Dircks Moving Services, Inc.

I, the undersigned [x] plaintiff [ ] defendant [ ] attorney for [ ] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

**GENERAL CIVIL**
**Subsequent Actions**
[ ] Claim Impleading Third Party Defendant
   [ ] Monetary Damages
   [ ] No Monetary Damages
[ ] Counterclaim
   [ ] Monetary Damages
   [ ] No Monetary Damages
[ ] Cross Claim
[ ] Interpleader
[ ] Reinstatement (other than divorce or driving privileges)
[ ] Removal of Case to Federal Court
**Business & Contract**
[ ] Attachment
[ ] Confessed Judgment
[ ] Contract Action
[ ] Contract Specific Performance
[ ] Detinue
[ ] Garnishment
**Property**
[ ] Annexation
[ ] Condemnation
[ ] Ejectment
[ ] Encumber/Sell Real Estate
[ ] Enforce Vendor's Lien
[ ] Escheatment
[ ] Establish Boundaries
[ ] Landlord/Tenant
   [ ] Unlawful Detainer
[ ] Mechanics Lien
[ ] Partition
[ ] Quiet Title
[ ] Termination of Mineral Rights
**Tort**
[ ] Asbestos Litigation
[ ] Compromise Settlement
[ ] Intentional Tort
[ ] Medical Malpractice
[ ] Motor Vehicle Tort
[ ] Product Liability
[ ] Wrongful Death
[x] Other General Tort Liability

**ADMINISTRATIVE LAW**
[ ] Appeal/Judicial Review of Decision of (select one)
   [ ] ABC Board
   [ ] Board of Zoning
   [ ] Compensation Board
   [ ] DMV License Suspension
   [ ] Employee Grievance Decision
   [ ] Employment Commission
   [ ] Local Government
   [ ] Marine Resources Commission
   [ ] School Board
   [ ] Voter Registration
   [ ] Other Administrative Appeal

**DOMESTIC/FAMILY**
[ ] Adoption
   [ ] Adoption – Foreign
[ ] Adult Protection
[ ] Annulment
   [ ] Annulment – Counterclaim/Responsive Pleading
[ ] Child Abuse and Neglect – Unfounded Complaint
[ ] Civil Contempt
[ ] Divorce (select one)
   [ ] Complaint – Contested*
   [ ] Complaint – Uncontested*
   [ ] Counterclaim/Responsive Pleading
   [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
[ ] Separate Maintenance
   [ ] Separate Maintenance Counterclaim

**WRITS**
[ ] Certiorari
[ ] Habeas Corpus
[ ] Mandamus
[ ] Prohibition
[ ] Quo Warranto

**PROBATE/WILLS AND TRUSTS**
[ ] Accounting
[ ] Aid and Guidance
[ ] Appointment (select one)
   [ ] Guardian/Conservator
   [ ] Standby Guardian/Conservator
   [ ] Custodian/Successor Custodian (UTMA)
[ ] Trust (select one)
   [ ] Impress/Declare/Create
   [ ] Reformation
[ ] Will (select one)
   [ ] Construe
   [ ] Contested

**MISCELLANEOUS**
[ ] Amend Death Certificate
[ ] Appointment (select one)
   [ ] Church Trustee
   [ ] Conservator of Peace
   [ ] Marriage Celebrant
[ ] Approval of Transfer of Structured Settlement
[ ] Bond Forfeiture Appeal
[ ] Declaratory Judgment
[ ] Declare Death
[ ] Driving Privileges (select one)
   [ ] Reinstatement pursuant to § 46.2-427
   [ ] Restoration – Habitual Offender or 3rd Offense
[ ] Expungement
[ ] Firearms Rights – Restoration
[ ] Forfeiture of Property or Money
[ ] Freedom of Information
[ ] Injunction
[ ] Interdiction
[ ] Interrogatory
[ ] Judgment Lien-Bill to Enforce
[ ] Law Enforcement/Public Official Petition
[ ] Name Change
[ ] Referendum Elections
[ ] Sever Order
[ ] Taxes (select one)
   [ ] Correct Erroneous State/Local
   [ ] Delinquent
[ ] Vehicle Confiscation
[ ] Voting Rights – Restoration
[ ] Other (please specify)

[x] Damages in the amount of $ 450,000.00 ..................... are claimed.

.......08/13/2020.......
DATE

*signature:* M. Michelle Douglas
[x] PLAINTIFF [ ] DEFENDANT [ ] ATTORNEY FOR [ ] PLAINTIFF [ ] DEFENDANT

D. Michelle Douglas
PRINT NAME
Kalbian Hagerty LLP
ADDRESS/TELEPHONE NUMBER OF SIGNATOR
888 17th Street, NW, Suite 1000, Washington, DC 20006
ADDRESS/TELEPHONE NUMBER OF SIGNATOR
mdouglas@kalbianhagerty.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

FORM CC-1416 (MASTER) PAGE ONE 07/16

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

## Civil Action Type Codes
### (Clerk's Office Use Only)

| | |
|---|---|
| Accounting .................................................. ACCT | Ejectment ...................................................... EJET |
| Adoption ..................................................... ADOP | Encumber/Sell Real Estate ........................... RE |
| Adoption – Foreign ..................................... FORA | Enforce Vendor's Lien ............................... VEND |
| Adult Protection .......................................... PROT | Escheatment ................................................. ESC |
| Aid and Guidance ......................................... AID | Establish Boundaries .................................. ESTB |
| Amend Death Certificate ............................. ADC | Expungement .............................................. XPUN |
| Annexation ............................................... ANEX | Forfeiture of Property or Money .............. FORF |
| Annulment ................................................. ANUL | Freedom of Information ............................... FOI |
| Annulment -- Counterclaim/Responsive Pleading .. ACRP | Garnishment ............................................ GARN |
| Appeal/Judicial Review | Injunction ................................................... INJ |
|   ABC Board ............................................. ABC | Intentional Tort .......................................... ITOR |
|   Board of Zoning ................................... ZONE | Interdiction ................................................ INTD |
|   Compensation Board .......................... ACOM | Interpleader .............................................. INTP |
|   DMV License Suspension ........................... JR | Interrogatory .............................................. INTR |
|   Employment Commission ...................... EMP | Judgment Lien – Bill to Enforce ............... LIEN |
|   Employment Grievance Decision ......... GRV | Landlord/Tenant ............................................ LT |
|   Local Government ............................... GOVT | Law Enforcement/Public Official Petition ......... LEP |
|   Marine Resources .................................. MAR | Mechanics Lien ........................................ MECH |
|   School Board ............................................ JR | Medical Malpractice .................................. MED |
|   Voter Registration ............................... AVOT | Motor Vehicle Tort ...................................... MV |
|   Other Administrative Appeal ............. AAPL | Name Change ............................................... NC |
| Appointment | Other General Tort Liability ..................... GTOR |
|   Conservator of Peace ............................ COP | Partition ................................................... PART |
|   Church Trustee .................................. AOCT | Permit, Unconstitutional Grant/Denial by Locality LUC |
|   Custodian/Successor Custodian (UTMA) ..... UTMA | Petition – (Miscellaneous) .......................... PET |
|   Guardian/Conservator ........................ APPT | Product Liability ...................................... PROD |
|   Marriage Celebrant ............................ ROMC | Quiet Title .................................................... QT |
|   Standby Guardian/Conservator ......... STND | Referendum Elections .............................. ELEC |
| Approval of Transfer of Structured Settlement ... SS | Reinstatement (Other than divorce or driving |
| Asbestos Litigation ........................................ AL |   privileges) .............................................. REIN |
| Attachment ................................................. ATT | Removal of Case to Federal Court ............. REM |
| Bond Forfeiture Appeal ................................ BFA | Restore Firearms Rights – Felony ............ RFRF |
| Child Abuse and Neglect – Unfounded Complaint .. CAN | Restore Firearms Rights – Review ........... RFRR |
| Civil Contempt ......................................... CCON | Separate Maintenance .............................. SEP |
| Claim Impleading Third Party Defendant – | Separate Maintenance – Counterclaim/Responsive |
|   Monetary Damages/No Monetary Damages ......... CTP |   Pleading ............................................... SCRP |
| Complaint – (Miscellaneous) .................... COM | Sever Order ............................................... SEVR |
| Compromise Settlement .......................... COMP | Sex Change ................................................. COS |
| Condemnation .......................................... COND | Taxes |
| Confessed Judgment ...................................... CJ |   Correct Erroneous State/Local ........... CTAX |
| Contract Action ........................................ CNTR |   Delinquent .......................................... DTAX |
| Contract Specific Performance .................. PERF | Termination of Mineral Rights .................. MIN |
| Counterclaim – Monetary Damages/No Monetary | Trust – Impress/Declare/Create ................ TRST |
|   Damages .................................................. CC | Trust – Reformation ................................... REFT |
| Cross Claim ............................................. CROS | Uniform Foreign Country Money Judgments .. RFCJ |
| Declaratory Judgment .............................. DECL | Unlawful Detainer ......................................... UD |
| Declare Death ........................................... DDTH | Vehicle Confiscation .................................. VEH |
| Detinue ...................................................... DET | Voting Rights – Restoration ...................... VOTE |
| Divorce | Will Construction ...................................... CNST |
|   Complaint – Contested/Uncontested ....... DIV | Will Contested .......................................... WILL |
|   Counterclaim/Responsive Pleading ...... DCRP | Writs |
|   Reinstatement – Custody/Visitation/Support/ |   Certiorari .................................................. WC |
|     Equitable Distribution ......................... CVS |   Habeas Corpus ...................................... WHC |
| Driving Privileges |   Mandamus ................................................ WM |
|   Reinstatement pursuant to § 46.2-427 ......... DRIV |   Prohibition ............................................... WP |
|   Restoration – Habitual Offender or |   Quo Warranto ...................................... WQW |
|     3rd Offense ........................................ REST | Wrongful Death ........................................... WD |

# COMMONWEALTH OF VIRGINIA





PRINCE WILLIAM CIRCUIT COURT
Civil Division
9311 LEE AVENUE
MANASSAS VA 20110
(703) 792-6029

Virginia:                              Proof of Service
In the PRINCE WILLIAM CIRCUIT COURT

Case number: 153CL20008031-00
Service number: 002
Service filed: August 13, 2020
Served by: SPECIAL PROCESS SERVER                    Judge:
Style of case: R THOMAS TIBBETTS  vs COLEMAN WORLDWIDE MOVING LLC
Service on: DIRCKS MOVING SERVICES INC          Attorney: DOUGLAS, D MICHELLE
        SERVE: R/A BRADLEY D WEECH                  888 17TH STREET, NW, STE 1000
        DAVID MILES MCGUIRE                          202-223-5600
        GARDNER, PLLC                                WASHINGTON DC 20006
        40  RIO SALADO PKWY, STE 425
        TEMPE AZ 85281

                    COMPLAINT
Instructions:

Returns shall be made hereon, showing service of Summons issued Thursday, August 13, 2020 with a copy of the
Complaint filed Thursday, August 13, 2020 attached.


Hearing date  :
Service issued: Thursday, August 13, 2020

For Sheriff Use Only

# COMMONWEALTH OF VIRGINIA

 SERVE THIS COPY



PRINCE WILLIAM CIRCUIT COURT
Civil Division
9311 LEE AVENUE
MANASSAS VA 20110
(703) 792-6029

Summons

To: DIRCKS MOVING SERVICES INC
SERVE: R/A BRADLEY D WEECH
DAVID MILES MCGUIRE
GARDNER, PLLC
40 RIO SALADO PKWY, STE 425
TEMPE AZ 85281

Case No. 153CL20008031-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Thursday, August 13, 2020

Clerk of Court: JACQUELINE C SMITH

by _____
(CLERK/DEPUTY CLERK )

Instructions:     COMPLAINT

Hearing Official:

Attorney's name:     DOUGLAS, D MICHELLE
888 17TH STREET, NW, STE 1000
202-223-5600
WASHINGTON DC 20006

FILED

2020 AUG 13 PM 12: 27

CIRCUIT COURT CLERKS OFFICE
PRINCE WILLIAM COUNTY, VA

BY_____ DEPUTY